The STATE of Ohio, Appellee,

v.

COOPER, Appellant.

[Cite as State v. Cooper, 151 Ohio App.3d 790, 2003-Ohio-1032.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 19432.

Decided March 7, 2003.

Fᴀɪɴ, Presiding Judge.

{¶ 1} Defendant-appellant Jackie H. Cooper appeals from her conviction for obstructing official business. She contends that R.C. 2921.31(A) may not constitutionally be applied to her because to do so would violate her right to free speech under the First Amendment to the United States Constitution. She also

argues that her conviction is not supported by sufficient evidence and that her conviction is against the manifest weight of the evidence.

{¶ 2} Upon review, we hold that the application of R.C. 2921.31(A) to Cooper's conduct does not violate her First Amendment right to free speech. However, we agree with Cooper that her conviction is not supported by sufficient evidence because there is no evidence in the record that her actions actually hampered or impeded a public official in the performance of his lawful duties. We conclude that Cooper's conviction is not otherwise against the manifest weight of the evidence. Because we conclude that the state failed to prove that Cooper actually succeeded in hampering or impeding a public official, the judgment of the trial court is reversed, and this cause is remanded in order that the trial court may consider the lesser-included offense of attempted obstruction of official business.

I

{¶ 3} On September 21, 2001, Dayton Police Detectives Keith Coberly and Michael August entered The Annex, an adult bookstore. The detectives were there to inspect the video viewing booths at the back of the store for proper lighting and to ensure that there were no doors on the booths. In addition, the detectives were looking for customers having sex or masturbating in the booths.

{¶ 4} When the detectives entered the store, defendant-appellant Jackie Cooper was standing at the cash register at the front of the store. The detectives, who were in plain clothes, identified themselves and told Cooper that they were there for a booth inspection. Cooper asked for their names and badge numbers. The detectives told her that they would provide that information after their inspection, as they had done on many previous occasions. The detectives continued to walk to the back of the store. However, Cooper, who stood only four feet away from the officers, began repeatedly to yell, "I need your badge numbers. You can't go back there. I need your badge numbers." Although she followed the detectives down the aisle, she continued to yell even more loudly as they approached the back of the store.

{¶ 5} In his testimony, Det. Coberly explained the need for surprise when trying to catch individuals performing in illegal sex acts. Nevertheless, despite Cooper's yelling, the detectives did arrest one man who was masturbating in the back of the store. There was no evidence that any others were in the back of the store, or that the quality of the evidence obtained against the individual who was there suffered in any respect as a result of Cooper's yelling. Det. Coberly also testified that Cooper's voice was much louder than was necessary for the short distance between them. He knew from previous visits that voices in the front of the store could be heard in the back. Therefore, Det. Coberly believed that

Cooper intended to warn any customers who were engaged in illegal behavior in the video booths that the detectives were coming. Following a bench trial, Cooper was found guilty of obstructing official business and was sentenced accordingly. From her conviction and sentence, Cooper appeals.

II

{¶ 6} Appellant's first assignment of error is as follows:

{¶ 7} "The trial court erred when it found Ms. Cooper guilty of obstructing official business because Ms. Cooper's actions are protected by the First Amendment."

{¶ 8} When a constitutional challenge is made against a statute, there is a strong presumption in favor of constitutionality. *State v. Warner* (1990), 55 Ohio St.3d 31, 43, 564 N.E.2d 18. In furtherance of that presumption, courts must liberally construe statutes in order to save them from constitutional infirmities. *State v. Sinito* (1975), 43 Ohio St.2d 98, 101, 72 O.O.2d 54, 330 N.E.2d 896.

{¶ 9} In order to decide whether a statute violates the First Amendment, we must first determine whether the statute regulates the content of speech or simply the time, place, and manner of the speech. *Painesville Bldg. Dept. v. Dworken & Bernstein Co., L.P.A.* (2000), 89 Ohio St.3d 564, 567, 733 N.E.2d 1152, citing *Ladue v. Gilleo* (1994), 512 U.S. 43, 59, 114 S.Ct. 2038, 129 L.Ed.2d 36. We must then apply the appropriate level of scrutiny to the challenged statute. Id.

{¶ 10} A restriction is considered content-neutral if it is imposed without any reference to the content of the speech. *United Auto Workers, Local Union 1112 v. Philomena* (1998), 121 Ohio App.3d 760, 794, 700 N.E.2d 936, citing *Boos v. Barry* (1988), 485 U.S. 312, 320, 108 S.Ct. 1157, 99 L.Ed.2d 333. On the other hand, "Laws that, by their terms, apply to speech based on the topic or viewpoint of the expression are content-based." Id., citing *Burson v. Freeman* (1992), 504 U.S. 191, 197, 112 S.Ct. 1846, 119 L.Ed.2d 5. Furthermore, "restrictions that focus on the direct impact of the speech on its audience are properly analyzed as content-based." *Seven Hills v. Aryan Nations* (1996), 76 Ohio St.3d 304, 306, 667 N.E.2d 942, citing *Boos,* supra, at 321, 108 S.Ct. 1157, 99 L.Ed.2d 333.

{¶ 11} Cooper was convicted of obstruction of official business, in violation of R.C. 2921.31(A), which provides: "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public

official of any authorized act within his official capacity, shall do any act which hampers or impedes a public official in the performance of his lawful duties."

{¶ 12} We have previously upheld the constitutionality of R.C. 2921.31(A). *Dayton v. Van Hoose* (Dec. 8, 2000), Montgomery App. No. 18053, 2000 WL 1803867. In *Van Hoose* we concluded that the statute regulated only the manner of speech, and, as a result, we applied an intermediate level of scrutiny. After further consideration, we are of the opinion that the statute is not content-neutral, at least as it is applied in this case.

{¶ 13} As applied, R.C. 2921.31(A) prohibits citizens from revealing the identity of undercover police officers; the restriction is based solely on the content of the speech. In other words, it mattered not what form Cooper's signal took; if she had used a buzzer, or any other form of communication, to signal to whoever was in the back room that the police were coming, the statute would apply, so long as the police were hampered or impeded as a result. The essence of the offense is the signal, not the means by which the signal is transmitted. Moreover, the statute focuses on the direct impact of speech on public officials as they carry out their duties. See, e.g., *Seven Hills,* supra. Therefore, R.C. 2921.31(A) is a content-based restriction on speech, and strict scrutiny must be applied.

{¶ 14} "[I]n order to justify a content-based regulation, the government is required to show a compelling interest in order to limit speech, and the regulation must be narrowly drawn to achieve that interest." *Painesville Bldg. Dept.,* supra, at 567, 733 N.E.2d 1152, quoting *United States v. Playboy Entertainment Group, Inc.* (2000), 529 U.S. 803, 120 S.Ct. 1878, 146 L.Ed.2d 865. Clearly, the government has a compelling interest in protecting the safety of undercover police officers. In fact, "[i]t is undisputed that the State has an overriding interest in protecting the safety, as well as the confidentiality, of its undercover officers." See, e.g., *State v. Washington* (2001), 142 Ohio App.3d 268, 272, 755 N.E.2d 422, quoting *Ayala v. Speckard* (C.A.2, 1996), 89 F.3d 91, 95. R.C. 2921.31(A) serves that purpose.

{¶ 15} Furthermore, R.C. 2921.31(A) is narrowly tailored to achieve that goal. The statute does not impose a blanket prohibition against revealing the identity of an undercover police officer. The statute prevents a citizen only from revealing the identity of an undercover officer when the officer is actively investigating a crime, the effect is to hamper or impede the officer in the performance of the officer's duties, and the intent is to prevent, obstruct, or delay the officer in the performance of his official duties.

{¶ 16} A contrary holding would exempt from the application of the criminal statutes anyone whose participation is limited to communications. A participant

in a burglary whose sole function is to stand outside and warn the other participants of the arrival of police, for example, could not be prosecuted for burglary, if mere communications are exempted from the application of the criminal laws by virtue of the Free Speech Clause. The same would be true of conspirators who did not, themselves, commit any overt acts in the furtherance of the conspiracy. We do not understand the right of free speech to extend so far.

{¶ 17} We hold that the application of R.C. 2921.31(A) to Cooper's conduct does not offend the Free Speech Clause of the First Amendment to the United States Constitution. Accordingly, Cooper's first assignment of error is overruled.

### III

{¶ 18} Cooper's second assignment of error is as follows:

{¶ 19} "The trial court erred when it overruled Ms. Cooper's Criminal Rule 29 motion for acquittal because the evidence presented by the State was insufficient to support her conviction."

{¶ 20} A Crim.R. 29 motion tests the sufficiency of the evidence presented at trial. *State v. Williams* (1996), 74 Ohio St.3d 569, 576, 660 N.E.2d 724. When considering a sufficiency-of-the-evidence argument, an appellate court must "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. More precisely, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.

{¶ 21} As stated above, Cooper was convicted of violating R.C. 2921.31(A). That statute provides that "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within his official capacity, shall do any act which hampers or impedes a public official in the performance of his lawful duties."

{¶ 22} Cooper does not deny that the detectives were public officials acting within their official capacity. Instead, she argues that repeatedly and loudly yelling at the officers for their badge numbers is insufficient evidence of an "act" to support a conviction for obstructing official business. Cooper also claims that the state failed to prove that she acted with an intent to hamper or impede the detectives. We disagree.

{¶ 23} The Ohio Supreme Court held in *Dayton v. Rogers* (1979), 60 Ohio St.2d 162, 164, 14 O.O.3d 403, 398 N.E.2d 781, that the General Assembly

did not intend for the word "act" in R.C. 2921.31(A) to include a mere statement. However, the court later limited that holding to the facts of *Rogers*. *State v. Bailey* (1994), 71 Ohio St.3d 443, 644 N.E.2d 314. Two years later, *Rogers* was overruled. *State v. Lazzaro* (1996), 76 Ohio St.3d 261, 667 N.E.2d 384, syllabus. Therefore, statements alone can·constitute an "act" within the meaning of the statute. Clearly, the state offered sufficient evidence for the trial court to find that Cooper was repeatedly and loudly yelling for the detectives to show her their badges.

{¶ 24} Additionally, we conclude that the state offered sufficient evidence of Cooper's intent to hamper or impede the detectives in their investigation. Cooper was familiar with the detectives, who had been to the store on numerous occasions. Furthermore, on those previous visits, the detectives had always showed Cooper their badges before leaving the premises. In light of that history, it was certainly reasonable for the trial court to conclude that Cooper loudly and repeatedly yelled for the detectives to show their badges in order to warn any customers who were engaging in illegal sex acts in the rear of the store.

{¶ 25} Despite Cooper's intentions, however, there is no evidence in this record that the detectives were, in fact, hampered or impeded in the performance of their duties. To the contrary, Det. Coberly acknowledged that one individual was arrested after being found masturbating in a video booth. There is no evidence that any others had been in the back of the store, and there is no evidence in this record that the quality of the evidence obtained against the individual arrested suffered as a result of Cooper's acts. The detectives were successful in their investigation. Therefore, the state's evidence is insufficient to prove that the detectives were hampered or impeded in the performance of their official duties.

{¶ 26} However, R.C. 2923.02(A) states that "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." An attempt to commit a crime is a criminal offense. While Cooper should not have been found guilty of obstructing official business, there is sufficient evidence in the record to support a conviction of the lesser-included offense of attempted obstruction of official business.

{¶ 27} Cooper's second assignment of error is sustained.

## IV

{¶ 28} Cooper's third assignment of error is as follows:

{¶ 29} "The trial court's determination that Ms. Cooper was guilty beyond a reasonable doubt was against the manifest weight of the evidence."

{¶ 30} In this assignment of error, Cooper contends that the trial court's conclusion that she intended, by her acts, to prevent, obstruct, or delay the police officer's performance of his official duty is against the manifest weight of the evidence. We conclude that the evidence in this record permits a reasonable inference that Cooper's yelling at the officers, while only four feet away, that she needed to see their badge numbers, ever more loudly as they approached the back room, was intended to signal any customers who might be back there that the police were coming. That Cooper knew that patrons of the store might be engaging in masturbation or other sexual acts seems also to be a likely inference, bringing to mind the proverbial piano player in the brothel who claimed not to know what was going on upstairs.

{¶ 31} We conclude that the trial court's finding of the requisite intent is not against the manifest weight of the evidence. Cooper's third assignment of error is overruled.

V

{¶ 32} Cooper's second assignment of error having been sustained, and her other assignments of error having been overruled, we reverse the judgment of the trial court, and this cause is remanded for further proceedings consistent with this opinion, which shall include consideration of the lesser-included offense of attempted obstruction of official business.

Judgment reversed
and cause remanded.

BROGAN and WOLFF, JJ., concur.