JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, James Weems, appeals his criminal conviction by a jury in Cleveland Municipal Court for obstructing official business, in violation of Cleveland Codified Ordinance 615.06.
 {¶ 2} On September 8, 2002, at two o'clock in the morning, police officers Scullin and Przybylski observed a vehicle driving erratically and pulled it over. The vehicle had heavily tinted windows, which made it difficult for the officers to see inside the vehicle. Initially, the officers had observed what they "thought to be maybe the outline of four people" in the vehicle. This traffic stop occurred in a high crime area. One officer determined the driver had a learner's permit, but no other person in the vehicle had a license. The driver was then removed and, because he was driving the vehicle illegally, he was placed in the rear seat of the squad car. The other officer began to remove the occupant of the front passenger seat to determine his identity.
 {¶ 3} At that point, while the officers were in the process of removing the occupants from the vehicle, appellant Weems arrived at the scene in his minivan and stopped his vehicle six feet from Officer Scullin, who was standing at the driver's side door of the stopped vehicle. The occupants of the Weems' minivan began screaming and cursing at the officers. Officer Scullin could not see his partner, Officer Przybylski, who was removing and escorting the front-seat passenger to the squad car. Finding himself standing between the appellant's minivan and the stopped vehicle with at least two more passengers whose actions could not be clearly observed because of the dark windows, Officer Scullin drew his weapon. Weems and the other occupants in his vehicle screamed at the officers that their son was in the stopped vehicle.
 {¶ 4} Officer Scullin asked Weems to pull his minivan down the street where he could watch from a distance. Weems refused to drive down the street and instead parked his minivan behind the squad car. After parking his minivan, Weems and his wife got out of the vehicle. The officers instructed both of them to get back into their vehicle and leave the scene. The officers reiterated their command to the Weemses, stating if they did not get into their vehicle and leave, they would be obstructing official business. Seven times Weems was asked by the officers to leave the scene, and seven times he ignored their instructions.
 {¶ 5} Weems then approached Officer Scullin with closed hands, moving his arms erratically, all the while cursing and yelling that he was going to get "their peoples" to the scene. When Weems moved within three feet of Officer Scullin, he was placed under arrest. The vehicle ultimately contained four teenage boys, who were in violation of curfew, one of which was the appellant's son.
 {¶ 6} Weems was charged with obstructing official business, in violation of Cleveland Codified Ordinance ("C.C.O.") 615.06, in case No. CRB-038312; he was charged separately with driving under the influence ("DUI") in case No. 2002-TRC-086325. All charges were brought under the Cleveland ordinances and stemmed from the September 8, 2002 incident. Weems was arraigned and pleaded not guilty to both charges.
 {¶ 7} A jury trial followed, and on March 12, 2003, the jury rendered a verdict finding Weems guilty on one count of obstructing official business, in violation of C.C.O. 615.06. The jury rendered a verdict of not guilty on the DUI charge.[1]
 {¶ 8} On April 3, 2003, the trial court sentenced Weems to 180 days in jail and a fine of $1000; however, the trial judge suspended $900 of the fine and all 180 days in jail on the condition that Weems perform 100 hours of community service work and remain on active probation for one year. This timely appeal follows.
 {¶ 9} The appellant presents four assignments of error for our review.[2] Assignments II and IV will be addressed together because they raise the same standard of review.
 SUFFICIENCY OF EVIDENCE {¶ 10} In State v. Jenks (1991), 61 Ohio St.3d 259, the Ohio Supreme Court re-examined the standard of review to be applied by an appellate court when reviewing a claim of insufficient evidence:
 {¶ 11} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)" Id. at ¶ 2 of the syllabus.
 {¶ 12} More recently, in State v. Thompkins (1997),78 Ohio St.3d 380, the Ohio Supreme Court stated the following with regard to the "sufficiency" as opposed to the "manifest weight" of the evidence:
 {¶ 13} "`Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain the conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson
(1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982),457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781,61 L.Ed.2d 560." Id. at 386-387.
 {¶ 14} Finally, we note that a judgment will not be reversed upon insufficient or conflicting evidence if it is supported by competent, credible evidence which goes to all the essential elements of the case. Cohen v. Lamko (1984), 10 Ohio St.3d 167.
 {¶ 15} In the instant matter, appellant was convicted of C.C.O. 615.06 (A) which states:
 {¶ 16} "No person, without privilege to do so and with purpose to prevent, obstruct or delay the performance by a public official of any authorized act within his official capacity, shall do any act which hampers or impedes a public official in the performance of his lawful duties."
 {¶ 17} To find a violation of C.C.O. 615.06 requires finding more than an intent to do the act; it requires finding the specific intent to prevent, to obstruct, or to delay the performance by a public official of any authorized act within his official capacity. Criminal intent may be proven by circumstantial evidence; however, the inferences giving rise to a finding of intent must be reasonable.
 {¶ 18} Courts have generally required an affirmative act for the offense of obstruction of official business. NorthRidgeville v. Reichbaum (1996), 112 Ohio App.3d 79, 84; Hiltonv. Hamm (1986), 33 Ohio App.3d 175, 176. Mere failure to obey a law enforcement officer's request does not bring a defendant within the ambit of this offense. Garfield Hts. v. Simpson
(1992), 82 Ohio App.3d 286. The Ohio Supreme Court has not ruled on the issue of whether true statements spoken boisterously to a public official constitute the proscribed conduct.Parma v.Campbell (Nov. 1, 2001), Cuyahoga App. Nos. 79041, and 79042. Courts have taken a case-by-case approach, all the while mindful that the inclusion of mere speech as a proscribed conduct may run afoul of the constitutionally protected right to freedom of speech. Id.
 {¶ 19} In Warren v. Lucas (May 19, 2000), Trumbull App. No. 99-T-0019, the court affirmed the conviction of a defendant who became loud and belligerent and repeatedly interrupted police officers who were questioning another individual to the point that the officers could not conduct their questioning. The court concluded the defendant's volume and demeanor, more than any specific words that were said, prevented the police investigation and obstructed official business. Also, in State v. Overholt
(Aug. 18, 1999), Medina App. No. 2905-M, the court found the defendant's conduct of repeatedly shouting insults at police officers, which distracted and delayed them from making an arrest of defendant's son, constituted an act for the offense of obstruction of official business.
 {¶ 20} Appellant claims the prosecution failed to present sufficient evidence to establish the specific intent to commit this crime. Furthermore, the appellant argues the jury verdict was not supported by sufficient evidence to constitute a prohibited "act" against the officers.
 {¶ 21} The appellant's specific intent or purpose to prevent, delay, or obstruct a public official is found in the trial testimony of Officers Scullin and Przybylski. Intent may be inferred from the actions of the appellant. Purposely obstructing official business "is determined from the manner in which it is done, the means used, and all the other facts and circumstances in evidence." State v. Puterbaugh (2001), 142 Ohio App.3d 185,189, citing State v. Hardin (1984), 16 Ohio App.3d 243, 245.
 {¶ 22} Appellant's intent to obstruct, delay, or prevent Officers Scullin and Przybylski from carrying out official business is found in his actions. Testimony from the arresting officers establishes: (1) appellant parked his vehicle behind the squad car after being told to move further down the street; (2) appellant ignored or refused to get back into his vehicle when requested to do so by the officers seven times; and (3) appellant used profanity while approaching Officer Scullin in an agitated and threatening manner. From these actions of the appellant, it can be inferred he acted with the specific intent and purpose to obstruct, delay, or prevent the police officers from potentially arresting his son.
 {¶ 23} Officer Scullin testified that appellant was not arrested for obstructing official business until he moved in a threatening manner toward the officer while swearing and using erratic arm movements with closed hands. Ignoring the officers' instructions, coupled with the boisterous use of profanity toward the officers, along with appellant's threatening posture, constitutes an affirmative act which delayed and prevented the officers from carrying out their official duty on a traffic stop. The officers testified the actions of the appellant caused them to divert their attention from a potentially dangerous situation of having an unknown number of individuals in a stopped vehicle. The officers further testified that the actions of the appellant escalated the situation and caused them to draw their weapons to control the situation. Appellant's actions further caused Officer Przybylski to handcuff the passenger in order to gain control of the scene.
 {¶ 24} To conclude, we find the appellant's conviction for obstructing official business in violation of C.C.O. 615.06 is supported by the sufficiency of the evidence. When viewed in the light most favorable to the prosecution, the State's evidence could convince a reasonable trier of fact beyond a reasonable doubt that the appellant unlawfully hampered and impeded Officers Scullin and Przybylski in the performance of their official duties.
 {¶ 25} Since the evidence is sufficient to support the appellant's conviction for obstructing official business, we will next address whether the appellant's conviction is against the manifest weight of the evidence.
 {¶ 26} Assignments I and III will be addressed together because they present the same standard for review.
 MANIFEST WEIGHT {¶ 27} Article IV, Section 3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact-finder. Thus, when a claim is assigned concerning the manifest weight of the evidence, an appellate court "has the authority and the duty to weigh the evidence and determine whether the findings of * * * the trier of fact were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial." State ex rel. Squire v.Cleveland (1948), 150 Ohio St. 303, 345.
 {¶ 28} The standard employed when reviewing a claim based upon the weight of the evidence is not the same standard to be used when considering a claim based upon the sufficiency of the evidence. The United States Supreme Court recognized these distinctions in Tibbs v. Florida (1982), 457 U.S. 31, where the court held that, unlike a reversal based upon the insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded verdicts of acquittal, i.e., invocation of the double jeopardy clause as a bar to relitigation. Id. at 43.
 {¶ 29} Upon application of the standards enunciated inTibbs, the court in State v. Martin (1983),20 Ohio App.3d 172, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated:
 {¶ 30} There being sufficient evidence to support the conviction as a matter of law, we next consider the claim that the judgment was against the manifest weight of the evidence. Here, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 {¶ 31} Appellant claims that the specific purpose to prevent, obstruct or delay the performance of a public official of any authorized act within his official capacity was never proven beyond a reasonable doubt. Also, appellant argues that the prohibited "act" committed against the officers was never proven beyond a reasonable doubt.
 {¶ 32} According to C.C.O. 615.06, the prosecution must prove beyond a reasonable doubt that appellant: (1) performed an act; (2) with the purpose to prevent, obstruct, or delay a public official; (3) which hampered or impeded the official's duties; and (4) which was not protected by any privilege.
 {¶ 33} We find upon our review of the record that the jury clearly did not lose its way so as to create a manifest miscarriage of justice. There was competent and credible testimony from Officers Scullin and Przybylski that the appellant attempted to delay, prevent, or obstruct them from completing their official duties by ignoring their commands to move his vehicle down the street in light of a potentially dangerous situation, seven times ignoring the officers' commands to get back into his vehicle, and using profanity while moving towards Officer Scullin in a threatening manner; therefore, we find that appellant's conviction for obstructing official business was not against the manifest weight of the evidence.
 {¶ 34} We note as plain error that the appellant was sentenced to the maximum sentence for a misdemeanor of the first degree, but was convicted of obstructing official business, a misdemeanor of the second degree. A sentence that exceeds the proscribed statutory maximum is void ab initio; therefore, we vacate the imposed sentence and remand this case for resentencing.
 {¶ 35} Judgment affirmed as to the conviction, but remanded for resentencing.
Diane Karpinski and John T. Patton,* JJ., concur.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Appellants four assignments of error state:
"I. The verdict was against the manifest weight of the evidence in that the element of a specific purpose to prevent, obstruct or delay the performance by a public official of any authorized act within his official capacity was never proven beyond a reasonable doubt."
"II. The verdict was not supported by sufficient evidence concerning the specific intent element."
"III. The verdict was against the manifest weight of the evidence in that the element of a prohibited `act' was never proven beyond a reasonable doubt."
"IV. The verdict was not supported by sufficient evidence concerning the existence of a prohibited act."
[1] At trial, there was a dispute as to whether Weems or his wife was actually driving the minivan when it was parked behind the squad car.
[2] Assignments of Error are included in the appendix.
* John T. Patton, Retired, of the eighth district court of appeals sitting by assignment.