OPINION
{¶ 1} Defendant, Douglas Prestel, appeals from his conviction and sentence for obstructing official business.
 {¶ 2} On April 18, 2004, at approximately 3:13 a.m., Miami Township police were dispatched to the area around 2701 Tiffany Way on report of a fight in the street. When officers arrived on the scene they observed no fight. The citizen who had called police, a nearby neighbor, told police that the persons involved in the fight had gone inside the residence located at 2701.
 {¶ 3} As Sergeant Adams approached that residence he observed two females out front who quickly went inside. Sergeant Adams knocked on the front door and Defendant came outside, closing the door behind him. Defendant seemed agitated that the police were there. Sergeant Adams asked Defendant if there had been a fight in the street. Defendant responded that his ex-girlfriend had showed-up, there was no longer any problem, and that is all Sergeant Adams needed to know.
 {¶ 4} Sergeant Adams asked to see Defendant's identification. Initially, Defendant refused to provide his identification, but then that said he would go inside the house and look for it. Defendant came back outside and said he couldn't find his identification. When Sergeant Adams advised Defendant that it would be sufficient if he just gave police his name, Defendant refused to provide his name and he quickly re-entered the home, slamming the door shut.
 {¶ 5} Sergeant Adams knocked on the door and told Defendant that he was "obstructing" and needed to come outside and talk with police. Defendant never came back outside. Instead, a woman named Holly Bennity came outside and talked with police. Ms. Bennity was cooperative and provided Defendant's name and age and told police that he was the homeowner. Ms. Bennity indicated that she didn't know anything about the fight. Sergeant Adams asked Bennity to advise Defendant that he needed to come outside and talk with police, and that as soon as it was established that no one was injured, police would clear the call and leave.
 {¶ 6} Ms. Bennity went back inside to relay the message to Defendant, but he never came back outside. Instead, Ms. Bennity came back outside and told police Defendant was on the phone with his attorney and his parents. Sergeant Adams asked Ms. Bennity to advise Defendant that he was obstructing official business and that charges would be filed against him. Police then left the scene without finding out what had happened with regard to the reported disturbance, who was involved, or whether anyone was injured.
 {¶ 7} Defendant was charged by complaint filed in Miamisburg Municipal Court with obstructing official business in violation of R.C. 2921.31(A). Defendant was found guilty following a bench trial. The trial court sentenced Defendant to a sixty day suspended jail term and fined him one hundred and fifty dollars.
 {¶ 8} Defendant timely appealed to this court from his conviction and sentence.
FIRST ASSIGNMENT OF ERROR
 {¶ 9} "THE TRIAL COURT ERRED WHEN IT FOUND THE DEFENDANT GUILTY OF OBSTRUCTING OFFICIAL BUSINESS IN VIOLATION OF OHIO REVISED CODE SECTION 2921.31(A) UPON INSUFFICIENT EVIDENCE AND IN THE ABSENCE OF PROOF BEYOND A REASONABLE DOUBT ON EACH AND EVERY ELEMENT OF THE OFFENSE."
 {¶ 10} Defendant argues that the evidence presented at trial is insufficient to sustain his conviction for obstructing official business. Specifically, Defendant claims that he did not engage in any affirmative, overt act that violates the statute; that he did not possess the required purpose or intent; and that he did not, in fact, actually hamper or impede a public official in the performance of his official duties.
 {¶ 11} R.C. 2921.31(A) provides: "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within his official capacity, shall do any act which hampers or impedes a public official in the performance of his lawful duties." (Emphasis supplied).
 {¶ 12} R.C. 2901.22(A) states: "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."
 {¶ 13} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. Thompkins, supra. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991),61 Ohio St.3d 259:
 {¶ 14} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 15} Defendant first argues that he did not do anything to engage in any affirmative act or undertaking that hampered or impeded the police officers in investigating the incident concerning which they were dispatched. Rather, he merely refused to cooperate with their request for information, which Defendant alleges is legally insufficient to constitute a violation of R.C. 2921.31(A). We agree.
 {¶ 16} Ohio courts have consistently held that in order to violate the obstructing official business statute a defendant must engage in some affirmative or overt act or undertaking that hampers or impedes a public official in the performance of the official's lawful duties, as opposed to merely failing or refusing to cooperate or obey a police officer's request for information. For example, refusing to answer the door when police knock and identify themselves and refusing to obey an officer's request for information does not constitute obstructing official business. See: City of Parma v. Campbell Ferrone (November 1, 2001), Cuyahoga App. Nos. 79042, 79042 (and the cases cited therein). Likewise, the mere refusal to cooperate with police and provide identification upon request does not constitute obstructing official business. State v.McCrone (1989), 63 Ohio App.3d 831; Middletown v. Hollon,156 Ohio App.3d 565, 2004-Ohio-1502.
 {¶ 17} Defendant did not make any false or incorrect statements to police which might constitute an "act" that hampered or impeded the officers in the performance of their lawful duties or investigation, as was the case in State v. Cobb (June 13, 2003), Montgomery App. No. 19474, 2003-Ohio-3034. Rather, Defendant merely refused to cooperate with police and comply with their requests for information and identification. When asked on cross-examination what specifically Defendant did that constituted obstructing official business, Sergeant Adams replied: "It's not telling me what went on as far as the incident in the street, if anyone was injured, producing his identification for me . . ." However, evidence of a mere refusal to cooperate with police and provide information upon request is insufficient to demonstrate a violation of R.C. 2921.31(A). Campbell Ferrone, supra; McCrone, supra; Hollon,supra.
 {¶ 18} Furthermore, the terms of R.C. 2921.31(A) which require that Defendant act "without privilege to do so" are implicated by these particular facts. Defendant was not suspected of any criminal conduct. At most, he may have witnessed the criminal conduct of others. Therefore, while his cooperation may be encouraged by government, he was not obligated by law to cooperate with police, to obey their request to provide information about what had happened, or to produce identification at their request. His conduct in declining to talk with police and continue about his business implicates the liberty interest protected by the Fourteenth Amendment to the United States Constitution, which permits a person in Defendant's circumstances to refuse to cooperate with police in that manner if he so chooses. In other words, Defendant was privileged to act as he did. No violation of R.C. 2921.31(A) has been demonstrated.
 {¶ 19} The State contends that when Defendant refused to give his name to police and then quickly turned and re-entered his home, slamming the door shut, his conduct hampered Sergeant Adams in effecting a lawfulTerry investigatory detention of Defendant. Such an argument is not supported by the record.
 {¶ 20} First of all, when asked what specifically Defendant did that constituted obstructing official business, Sergeant Adams did not refer to this conduct.
 {¶ 21} Second, Sergeant Adams indicated that he was unsure if reasonable suspicion even existed to believe a crime had occurred, a necessary predicate for a valid Terry stop. Terry v. Ohio (1968),392 U.S. 1, 88 S.Ct. 1868. Sergeant Adams didn't know what had occurred other than some sort of disturbance.
 {¶ 22} Third, our review of the record discloses that when Defendant turned and went inside his residence and slammed the door shut, he and Sergeant Adams were about five to six feet apart. If Sergeant Adams had any intention of physically restraining or detaining Defendant for questioning, he never communicated that intention to Defendant by any words or conduct. There is no evidence that Sergeant Adams ordered Defendant to stop, stay put, or that he grabbed for Defendant's arm. By his own testimony, Sergeant Adams did not step toward the door until Defendant went inside and slammed the door shut.
 {¶ 23} Fourth, returning to a matter mentioned above, Terry has no application, at least with respect to Defendant, because he was not suspected of criminal activity. It is only then that a law enforcement officer may perform an investigative stop or detention absent a warrant without violating the Fourteenth Amendment's prohibitions against unreasonable searches and seizures. To say that Defendant's conduct in failing to cooperate authorized the officer to detain him is mere bootstrapping.
 {¶ 24} Finally, Sergeant Adams indicated that he would have detained Defendant for questioning if he had the opportunity, not that he attempted to but Defendant had thwarted his efforts. Thus, the evidence simply does not demonstrate that Sergeant Adams actually attempted to grab Defendant's arm, much less that Defendant was aware of any attempt to restrain his freedom of movement and retreated inside his home in order to evade Sergeant Adams' grasp.
 {¶ 25} Even viewing the evidence presented in a light most favorable to the State, a rational trier of facts could not find all of the essential elements of obstructing official business proven beyond a reasonable doubt. The evidence is legally insufficient to sustain Defendant's conviction.
 {¶ 26} The first assignment of error is sustained. Defendant's conviction and sentence will be vacated and Defendant will be ordered discharged. Because our disposition renders Defendant's remaining assignments of error and arguments moot, we need not address them. App. R. 12(A)(1)(c).
Brogan, P.J. and Wolff, J., Concur.